**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY S. JARRELL,<br><br>Petitioner,<br><br>v.<br><br>SHELBIE SMITH, WARDEN,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 5:25-CV-02598-BYP<br><br>JUDGE BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG<br><br>**REPORT & RECOMMENDATION** |

## I. INTRODUCTION

Petitioner, Timothy S. Jarrell ("Mr. Jarrell"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Jarrell is serving a sentence of 10 to 15 years in prison after being convicted of rape, sexual battery, and assault.

Mr. Jarrell asserts two grounds for relief. Respondent, Warden Shelbie Smith ("Warden"), filed an answer/return of writ on January 12, 2026. (ECF No. 7). Mr. Jarrell filed a traverse on May 12, 2026. (ECF No. 9). This matter was referred to me on December 3, 2025 under Local Rule 72.2 to prepare a report and recommendation on Mr. Jarrell's petition. (*See* ECF non-document entry dated December 3, 2025). For the reasons set forth below, I recommend that Mr. Jarrell's petition be DISMISSED and/or DENIED. I further recommend that the Court not grant Mr. Jarrell a certificate of appealability.

## II. RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C.

§ 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Ninth Appellate District summarized the facts as follows:[1]

> {¶2} This appeal arises from incidents occurring on February 18, 2023, and February 19, 2023, involving Mr. Jarrell, his co-defendant Jessica Ashley Hutchins, and D.B., a victim of rape, sexual battery, assault, and theft.
>
> {¶3} After an investigation, Mr. Jarrell was charged with one count of rape, in violation of R.C. 2907.02(A)(1)(c)/(B), a felony of the first degree; one count of sexual battery, in violation of R.C. 2907.03(A)(2)/(B), a felony of the third degree; and one count of assault, in violation R.C. 2903.13(A)/(C), a misdemeanor of the first degree. Ms. Hutchins was also indicted on charges of rape and sexual battery, in addition to being indicted on charges of felony theft, and felony obstructing justice.
>
> {¶4} Mr. Jarrell and Ms. Hutchins pleaded not guilty to these charges and a joint jury trial followed for both defendants. The jury found Mr. Jarrell guilty of rape, sexual battery and assault. The jury also found Ms. Hutchins guilty of rape, sexual battery, a reduced theft charge, and obstructing justice.

(ECF No. 7-1, Exhibit 8); *State v. Jarrell*, C.A. No. 31137, 2025 WL 1793950, 2025-Ohio-2280 (9th Dist. June 30, 2025).

## III. PROCEDURAL HISTORY

### A. State Court Conviction

On April 27, 2023, Mr. Jarrell was indicted in the Summit County Court of Common Pleas on: (1) one first-degree felony count of rape in violation of O.R.C. §§ 2907.02(A)(1)(c) and 2709.02(B); (2) one third-degree felony count of sexual battery in violation of O.R.C. §§ 2907.03(A)(2) and 2709.03(B); and (3) one first-degree misdemeanor count of assault in violation of O.R.C. §§ 2903.13(A) and 2903.13(C). (ECF No. 8-1, Exhibit 1). On May 10, 2023, Mr. Jarrell pled not guilty to all charges. (ECF No. 7-1, Exhibit 2).

[1] The Ninth Appellate District's factual findings are discussed in greater detail below in connection with the merits of Mr. Jarrell's sufficiency of the evidence claims.

The case proceeded to trial. On March 25, 2024, the jury convicted Mr. Jarrell on all counts. (ECF No. 7-1, Exhibit 3). On May 1, 2024, the trial court sentenced him to an aggregate term of 10 to 15 years in prison. (ECF No. 7-1, Exhibit 4).

**B. <u>Direct Appeal</u>**

On May 31, 2024, Mr. Jarrell, through new appellate counsel, timely filed a notice of appeal to the Ninth Appellate District. (ECF No. 7-1, Exhibit 5). In his appellate brief, Mr. Jarrell raised the following assignments of error:

1. The trial court erred in allowing entirely-speculative testimony about drug facilitated sexual assault, in vioaltion [*sic*] of evidence rules 401, 402, 702, 703, and 704 of the Ohio Rules of Evidence, the Fififth [*sic*] and Fourteenth Amendments of the Ohio [*sic*] Constitution,[2] and Article One, Sections Ten and Sixteen of the Ohio Constitution.

2. Appellant's conviciton [*sic*] for rape, in violation of Section 2907(A)(1)(c) of the Ohio Revised Code, and sexual battery, in vioation [*sic*] of Section 2907.03(A)(2) of the Ohio Revised Code, are unconstitutional as it is against the manifest weight of the evidence and is based on insufficient evidence, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.

(ECF No. 7-1, Exhibit 6).

On June 30, 2025, the Ninth Appellate District affirmed. (ECF No. 7-1, Exhibit 8). Mr. Jarrell, through counsel, timely filed a notice of appeal to the Ohio Supreme Court. (ECF No. 7-1, Exhibit 9). In his memorandum in support of jurisdiction, Mr. Jarrell raised the following propositions of law:

1. The trial court erred in allowing entirely speculative testimony about drug facilitated sexual assault, in vioaltion [*sic*] of the evidence rules 401, 402, 702, 703, and 704 of the Ohio Rules of Evidence, the Fififth [*sic*] and Fourteenth Amendments of the Ohio Constitution, and Article One, Sections Ten and Sixteen of the Ohio Constitution.

---

[2] Based on the rest of Mr. Jarrell's brief, it is clear that he intended to refer to the Fifth and Fourteenth Amendments to the United States Constitution, not the Ohio Constitution. The Warden does not argue that Mr. Jarrell procedurally defaulted on this claim because he raised it purely as a matter of state law, and instead appears to concede that Mr. Jarrell intended to raise a federal constitutional claim.

2. Appellant's Conviciton [*sic*] for rape, in violation of Section 2907(A)(1)(c) of the Ohio Revised Code, and sexual battery, in vioation [*sic*] of Section 2907.03(A)(2) of the Ohio Revised Code, are unconstitutional as it is against he manifest weight of the evidence and is based on insufficient evidence, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.

(ECF No. 7-1, Exhibit 10). On October 14, 2025, the Ohio Supreme Court declined to accept jurisdiction of Mr. Jarrell's appeal. (ECF No. 7-1, Exhibit 11).

### C. <u>Federal Habeas Action</u>

On November 13, 2025, Mr. Jarrell, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition in the United States District Court for the Southern District of Ohio. (ECF No. 1). Mr. Jarrell's habeas petition raises two grounds for relief:[3]

1. Appellant's conviciton for rape, in violation of Section 2907(A)(1)(c) of the Ohio Revised Code, and sexual battery, in vioation of Section 2907.03(A)(2) of the Ohio Revised Code, are unconstitutional as it is against the manifest weight of the evidence and is based on insufficient evidence, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.

   <u>Supporting Facts</u>: Appellant's case contained a large – and unduly prejudicial – amount of testimony about "drug facilitated sexual assault." However, there was no evidence (1) that any sort of drugs were involved in the incidents; (2) that as a result of D.B.'s voluntary intoxication that her ability to resist or consent was substantially impaired.

2. Appellant's conviciton for rape, in violation of Section 2907(A)(1)(c) of the Ohio Revised Code, and sexual battery, in vioation of Section 2907.03(A)(2) of the Ohio Revised Code, are unconstitutional, as it is against the manifest weight of the evidence and is based on insufficient evidence, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.

   <u>Supporting Facts</u>: Petitioner's conviction was based largely on testimony that was speculative and unduly prejudicial. It was also based on expert testimony whose speculative nature is such that it would not be allowed in any other area of law – criminal or civil. The expert witness, whose testimony was held in great

---

[3] Mr. Jarrell's grounds for relief are presented verbatim.

> weight, delivered a cookie-cutter, cut-and-paste "expert report." That report was not case specific; neither was her testimony.

*Id*. On January 12, 2026, the Warden filed an answer/return of writ. (ECF No. 7). Mr. Jarrell filed a traverse on May 12, 2026. (ECF No. 9).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Summit County Court of Common Pleas sentenced Mr. Jarrell, and the Court takes judicial notice that Summit County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Jarrell's § 2254 petition.

### B. Exhaustion and Procedural Default

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have]

been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for

his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

**C. <u>Cognizable Federal Claim</u>**

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does

not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

**D. <u>AEDPA Standard of Review</u>**

28 U.S.C. § 2254, as amended by AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by

clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

### A. Procedural Default

The Warden first argues that Mr. Jarrell procedurally defaulted on both grounds for relief because he did not present them at all levels of the state court review process. The Warden's argument is well-taken with respect to Mr. Jarrell's second ground for relief, but not with respect to his first.

"[F]ederal courts ordinarily may not 'consider a claim in a *habeas* petition that was not fairly presented to the state courts' absent cause and prejudice to excuse the procedural default." *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (cleaned up). "[I]t does not suffice to only present the claim to a state trial court; rather, the petitioner must raise the claim in state court and 'pursue [it] through the state's ordinary appellate review procedures." *Id*. at 751-52 (quoting *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009)).

"In order to satisfy this requirement, and avoid a procedural default, the petitioner's federal habeas petition must be based on the same theory presented in the state court and cannot be based on a wholly separate or distinct theory." *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012); *see also Jenkins v. Smith*, No. 5:10 CV 1151, 2012 WL 6725674, at *10 (N.D. Ohio Nov. 30, 2012), *report and recommendation adopted*, 2012 WL 6759008 (N.D. Ohio Dec. 27, 2012) ("It is well-settled that a claim raised in a federal habeas petition must have been previously presented to the state court as the same claim on the same theory").

With respect to Mr. Jarrell's first ground for relief—in which he argues that there was no evidence that the victim had drugs in her system or was unable to consent—the Warden concedes that Mr. Jarrell raised his claim to the Ninth Appellate District. The Warden argues, however, that Mr. Jarrell did not present his claim to the Ohio Supreme Court because he argued only that the expert report of one of the State's witnesses, Dr. Jennifer Savitski, did not constitute substantial evidence to support his convictions.

The Warden's argument misreads Mr. Jarrell's brief to the Ohio Supreme Court. In his first proposition of law, Mr. Jarrell argued that the trial court erred in allowing speculative testimony regarding whether any drugs were involved and whether the victim's ability to consent was substantially impaired as a result of her voluntary intoxication. (ECF No. 7-1, Exhibit 10). In his second ground for relief, which raised a sufficiency of the evidence claim, Mr. Jarrell argued that "as outlined in the first Assignment of Error," his conviction "was based largely on testimony that was speculative and unduly prejudicial." *Id*. at PageID # 178. Mr. Jarrell then argued that his conviction "was *also* based on expert testimony whose speculative nature is such that it would not be allowed in any other area of law – criminal or civil." *Id*. (emphasis added). Mr. Jarrell thus argued *both* that the evidence in support of his

conviction was unduly speculative *and* that the testimony of Dr. Savitski should have been excluded. That first argument maps onto Mr. Jarrell's first ground for relief in his habeas petition. Mr. Jarrell thus fairly presented his first ground for relief at all levels of the state court review process, and I recommend that the Court reject the Warden's argument that he procedurally defaulted on that claim.

I reach a different conclusion, however, with respect to Mr. Jarrell's second ground for relief, which makes a sufficiency of the evidence claim based on Dr. Savitski's testimony. As just discussed, and as the Warden concedes, Mr. Jarrell raised that claim to the Ohio Supreme Court. However, the Warden is correct that Mr. Jarrell did not raise that issue as a sufficiency of the evidence argument before the Ninth Appellate District. Instead, he argued that the evidence was insufficient to show that the victim was too intoxicated to consent, without ever mentioning Dr. Savitski's testimony. (ECF No. 7-1, Exhibit 6, PageID # 90-95). As a result, Mr. Jarrell did not exhaust his claim before the Ninth Appellate District, and he has procedurally defaulted on it because he no longer has the ability to do so. *See Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review").

It is irrelevant that Mr. Jarrell made other sufficiency of the evidence arguments before the Ninth Appellate District, as a petitioner does not exhaust a sufficiency of the evidence claim in state court unless he does so under the same theory that he is pursuing in his habeas petition. *See Ozier v. Harry*, No. 17-1803, 2018 WL 3455217, at *2 (6th Cir. June 13, 2018) (holding that petitioner failed to exhaust and procedurally defaulted on sufficiency of the evidence claim where petitioner raised claim in state court under different theory than one

raised in habeas petition); *Bradford v. Harris*, No. 1:19-cv-00817, 2021 WL 1090828, at *7 (N.D. Ohio Feb. 25, 2021), *report and recommendation adopted*, 2021 WL 1087652 (N.D. Ohio Mar. 22, 2021) (same); *Smith v. Warden*, No. 1:09-cv-251, 2010 WL 3075166, at *15 (S.D. Ohio Apr. 14, 2010), *report and recommendation adopted*, 2010 WL 3075276 (S.D. Ohio Aug. 4, 2010) (same).

Likewise, the fact that Mr. Jarrell raised his second ground for relief before the Ohio Supreme Court is insufficient to preserve his claim, as a petitioner must raise the claim at all levels of the state court review process. Indeed, "[t]he Ohio Supreme Court's refusal to consider criminal constitutional questions raised for the first time in the Ohio Supreme Court is an established rule of long standing." *Coats v. Sheldon*, No. 3:11 CV 1017, 2012 WL 7037778, at *9 (N.D. Ohio Aug. 20, 2012), *report and recommendation adopted*, 2013 WL 474721 (N.D. Ohio Feb. 7, 2013) (quotation omitted). Thus, "[i]n Ohio, exhaustion cannot occur where the appellant raised a claim for the first time in the Ohio Supreme Court without having first presented it to the lower appellate court." *Hayes v. Gray*, No. 5:17-CV-2035, 2019 WL 6134567, at *9 (N.D. Ohio Oct. 22, 2019), *report and recommendation adopted*, 2019 WL 6134059 (N.D. Ohio Nov. 19, 2019).

Mr. Jarrell's procedural default can be excused if he demonstrates either cause and prejudice or that failure to consider his claims on the merits would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. However, Mr. Jarrell does not argue that there is any basis to excuse his default, and he instead argues only that his second ground for relief is not procedurally defaulted. I therefore recommend that the Court dismiss Mr. Jarrell's second ground for relief as procedurally defaulted. Out of an abundance of caution, however, I will analyze both claims on the merits.

**B. Merits**

In both grounds for relief, Mr. Jarrell argues that the jury's verdict was against the manifest weight of the evidence and was not supported by sufficient evidence. As the Warden correctly responds, however, "a manifest-weight-of-the-evidence argument is a state law argument . . . ." *Nash v. Eberlin*, 258 F. App'x 761, 764 n. 4 (6th Cir. 2007). Accordingly, manifest weight of the evidence claims are not cognizable on habeas review. *See Cannon v. Bobby*, No. 1:21-CV-1846-JRA, 2024 WL 1054450, at *8 (N.D. Ohio Jan. 26, 2024), *report and recommendation adopted*, 2024 WL 1051630 (N.D. Ohio Mar. 11, 2024) ("Claims regarding the manifest weight of the evidence arise under state law and thus are not cognizable in federal habeas."). I therefore recommend that the Court dismiss Mr. Jarrell's claims to the extent he is seeking to raise a manifest weight of the evidence argument.

Mr. Jarrell also argues that the evidence was insufficient to support his convictions for rape and sexual battery. Unlike manifest weight of the evidence arguments, challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The reviewing court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Review of sufficiency of the evidence challenges involves "a double layer of deference[.]" *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). "First, [a court] must view the evidence in the light most favorable to the prosecution, and determine whether 'any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mathis v. Colson*, 528 F. App'x 470, 476 (6th Cir. 2013) (quoting *Jackson*, 443 U.S. at 319). "Second, 'even were [a court] to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [a court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.'" *Id.* (quoting *Brown,* 567 F.3d at 205). Under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Mr. Jarrell presents two sufficiency of the evidence arguments. In ground one, he asserts that there was insufficient evidence to support his convictions because the state did not show that the victim was too intoxicated to consent to sexual activity.[4] In ground two, he argues that the evidence was insufficient in light of wholly speculative testimony from one of the State's witnesses, Dr. Savitski, regarding whether the case may have involved a "drug facilitated sexual assault" even though the victim did not test positive for any drugs.

The Ninth Appellate District rejected Mr. Jarrell's first sufficiency of the evidence argument on the merits, holding as follows:

> {¶19} Mr. Jarrell was found guilty of rape, in violation of R.C. 2907.02(A)(1)(c)/(B), and sexual battery, in violation of R.C. 2907.03(A)(2)/(B). R.C. 2907.02 states, in relevant part:

[4] In his traverse, Mr. Jarrell attempts to recast his first ground for relief as an argument that the trial court erred in permitting the state to introduce speculative and prejudicial evidence. That argument is not properly before the Court and I recommend that the Court decline to consider it. *See McDaniel v. Forshey*, No. 5:23-CV-01698, 2026 WL 1215058, at *11 n.8 (N.D. Ohio May 4, 2026), *report and recommendation adopted*, 2026 WL 1978632 (N.D. Ohio July 8, 2026) (declining to address argument raised for first time in traverse) (citing *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005)); *Hall v. Watson*, No. 1:24-CV-01902-JRA, 2026 WL 1162241, at *5 n.1 (N.D. Ohio Apr.29, 2026) (report and recommendation) ("claims raised for the first time in a traverse are not properly before a district court") (quoting *Royster v. Warden, Chillicothe Corr. Inst.*, No. 18-3362, 2018 WL 8138770, at *2 (6th Cir. Aug. 23, 2018)).

> (A)(1) No person shall engage in sexual conduct with another when any of the following applies:
>
> ...
>
> (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

Further, R.C. 2907.03 states, in relevant part:

> (A) No person shall engage in sexual activity with another; cause another to engage in sexual activity with the offender; or cause two or more other persons to engage in sexual activity when any of the following apply:
>
> ...
>
> (2) The offender knows that the other person's, or one of the other persons', ability to appraise the nature of or control the other person's own conduct is substantially impaired.

"Sexual activity" means sexual conduct or sexual contact, or both. R.C. 2907.01(C). "Sexual conduct" means:

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A). However, "substantial impairment" is not defined for purposes of this statute. In *State v. Jordan*, 2023-Ohio-3800, ¶ 22, the Supreme Court of Ohio defined substantial impairment, based upon the plain meaning of the words "substantially" and "impaired" as follows:

> "Substantially" has been defined as "in a substantial manner" or "so as to be substantial." Webster's Third New International Dictionary 2280 (2002). To better understand these definitions, we examine the word "substantial," which means "constituting substance" or "not seeming or imaginary." Id. "Impaired" means "to make worse" or "diminish in quantity, value, excellence, or strength." Id. at 1131.

*See also State v. Samamra*, 2025-Ohio-126, ¶ 10 (9th Dist.). Further, this Court has explained:

> a substantial impairment may be proven by the victim's own testimony, allowing the trier of fact to observe and evaluate the victim's ability to perceive the nature of or to control her conduct, and by the testimony of others who have interacted with the victim. The existence of substantial impairment in this context requires a case-by-case determination.

(Internal citation omitted.) *State v. Daniels*, 2011-Ohio-6414, ¶ 6 (9th Dist.).

{¶20} At trial, D.B. testified regarding the events that occurred on February 18, 2023, and February 19, 2023. D.B. explained she ran into Ms. Hutchins, a former co-worker, at Diner 42, and began having a conversation with her at the bar. Ms. Hutchins was with Mr. Jarrell and four children, but D.B. did not know Mr. Jarrell at that time. D.B. ordered a cheeseburger, three beers, and two shots. D.B. testified she ordered the shots for Ms. Hutchins and Mr. Jarrell as a "friendly gesture." Mr. Jarrell and Ms. Hutchins then invited D.B. to go to Johnny J's for a couple of drinks. D.B. followed Mr. Jarrell and Ms. Hutchins home so they could drop off their children and then followed them to Johnny J's.

{¶21} At Johnny J's, D.B. testified they ordered a drink and then got "kicked out" because Ms. Hutchins got into a fight with the bartender. D.B. indicated she did not finish her beer before they left Johnny J's. Mr. Jarrell then suggested they go to another bar and D.B. said she should not drive. Mr. Jarrell and Ms. Hutchins suggested D.B. ride with them and Ms. Hutchins directed D.B. to sit in the front seat. Mr. Jarrell was driving, D.B. sat in the front seat, and Ms. Hutchins sat in the back seat. D.B. testified she did not know where they were going, but they got on a highway. After drinking something that tasted like Fireball from a water bottle that was missing a "wrapper," in Mr. Jarrell's vehicle, D.B. testified regarding sporadic memories, with large lapses in time, that she could recall from February 18, 2023, and February 19, 2023.

{¶22} D.B. testified she had a memory of being in a hotel room and Mr. Jarrell grabbing her chin and throat hard, then hitting a wall. D.B. also remembered being thrown on the edge of the bed and falling on the floor on her back. D.B. testified she hit her head and back on the wall. D.B.'s next memory is walking out of the police station and seeing her brother at approximately 2 a.m. the next morning. D.B.'s brother came to the police station and took her home. Later that morning, D.B. remembers laying in her bed awake when her daughter came into the room. They started talking and D.B. realized she was "very sore." D.B. testified her neck, ribs, back, head, and scalp hurt. When asked about vaginal pain, D.B. indicated to Nurse Bailey, "[i]t just feels funny."

{¶23} Prior to going to the hospital at her daughter's behest, D.B. also noticed her phone, wallet, and money were missing. D.B. discovered she was taken to the Super 8 Motel because she saw a charge on her daughter's credit card that had been in her wallet. D.B. also discovered she was at Musketeers Bar through the use of a Google maps app on her daughter's phone that can track a person's location. While at the hospital, D.B. called the police to report this incident.

{¶24} Timothy Baker, a dispatch supervisor with the Richfield Police Department, testified that a 911 call came in at approximately 1 a.m. on February 19, 2023, from the Super 8 Motel in Richfield, Ohio. During that call, an employee of the Super 8 Motel reported there was a woman sitting down and crying and that she had gotten a room with another woman and a man. Further, the employee thought "something happened in the room."

{¶25} William Sprit, a patrol officer with the Village of Richfield Police, testified he was working the early morning hours of February 19, 2023, when he was dispatched to the Super 8 Motel in Richfield, Ohio. At that time, Officer Sprit came in contact with D.B. Officer Sprit described D.B.'s speech as mostly non-decipherable but he understood her to say she was "not okay." Officer Sprit described D.B. as "extremely distressed[,]" and in a "very intoxicated" state. On Officer Sprit's body camera footage, D.B. can be heard saying "[j]ust fucking get them[,]" and "[g]o get them." D.B. also told Office Sprit she could not drive home and that she had been drinking. On the same body camera footage, D.B. is seen lying face-down on the floor in the hallway of the Super 8 Motel and she is barefoot and crying. D.B. is slurring her words and the police officers reminded her several times to "breathe." D.B. kept repeating "I'm stupid" and said she knows she "sounds crazy." The police continue asking D.B. if she knows what happened but she cannot answer their questions, instead she only tells them bits and pieces of what occurred prior to coming to the Super 8 Motel. D.B. was unable to describe Mr. Jarrell's vehicle and continued crying while the police questioned her on details of what happened. When D.B. thought Mr. Jarrell and Ms. Hutchins were still in the hotel room, she told Officer Sprit "[t]ell them I'm going to fucking kill them."

{¶26} Ryan Kellackey, a detective with the Village of Richfield Police Department, testified he received a telephone call from Officer Shelby Noffsinger, a patrol officer with the Village of Richfield, advising him that D.B. was at the Medina Hospital and was having a sexual assault kit completed. Detective Kellackey went to the Medina Hospital to interview D.B. and instructed Officer Noffsinger to go to the Super 8 Motel and collect any available evidence. Detective Kellackey testified that the hotel room was in disarray, the door to the bathroom was broken, the bed was partially off its foundation, and a clump of brown hair, consistent with D.B.'s hair color, was found on the bed. Further, two bras were found in the room along with several beer bottles.

{¶27} When Detective Kellackey spoke with D.B., she informed him she had "no memory of anything that occurred at the hotel or at the Musketeers Bar in Richfield." D.B. "simply told [Detective Kellackey] that she had visions of being physically assaulted in the room." Detective Kellackey observed cuts and abrasions on D.B.'s head and chin and bruising on her arms and legs. Detective Kellackey also viewed the video footage from Musketeers Bar and testified he paid close attention to whether D.B. showed signs of impairment since she did not remember a large portion of the night. Detective Kellackey described D.B. as continually resting her head on her elbows or her head on the bar, having her head in Mr. Jarrell's lap, leaning onto Mr. Jarrell and/or Ms. Hutchins, and having trouble walking and with balance. On the Musketeers Bar patio, Detective Kellackey observed D.B. having trouble walking or

standing, and when D.B. appeared to be about to fall over, Ms. Hutchins would prevent her from falling and prop her up.

{¶28} Additionally, Detective Kellackey observed Mr. Jarrell "aggressively" standing up and putting his hand down D.B.'s pants up to his wrist for about 21 seconds, where it seems he is manipulating his wrist. The video footage also shows D.B. stumbling and swaying back and forth on her feet. Mr. Jarrell is seen grinding on D.B. from behind and he put his hand down her pants. While this is happening, Ms. Hutchins is seen with her hand down D.B.'s pants in the front. Ms. Hutchins is then seen removing her hand from D.B.'s pants, licking her fingers, and placing her fingers in Mr. Jarrell's mouth. Detective Kellackey indicated D.B. "looks very out of it[,]" and when Mr. Jarrell and Ms. Hutchins stop holding on to her, D.B. falls face first on the ground. Ms. Hutchins bends down, rubs D.B.'s crotch over her pants, and picks her up off the ground. Mr. Jarrell, Ms. Hutchins, and D.B. then leave the patio.

{¶29} Detective Kellackey testified that approximately 30 minutes passed between D.B. falling face first on the ground at the Musketeers Bar patio and walking into the Super 8 Motel. The video from the Super 8 Motel lobby showed D.B. and Ms. Hutchins kissing at the front desk and D.B. was having trouble standing up, was bobbing her head, and as described by Detective Kellackey, "her eyes are closed for a good portion of the time." D.B. handed her wallet to Ms. Hutchins who removed a credit card from the wallet and paid for the room. The video from the Super 8 Motel hallway then shows Mr. Jarrell, Ms. Hutchins, and D.B. walking down the hallway, and D.B. has trouble walking. D.B. hits both the left and right side walls as she walks down the hallway. Detective Kellackey described D.B. as having "heavy impairment[.]"

{¶30} Andrea Dennis, a forensic scientist in the DNA unit of the Ohio Bureau of Criminal Investigation, testified "DNA can be found in every cell in the human body except for red blood cells." Further, Ms. Dennis explained in forensic work, DNA typically comes from white blood cells, skin cells, and sperm cells. Ms. Dennis testified that Mr. Jarrell's DNA was found on D.B.'s vaginal samples, bilateral neck samples, and bilateral chest and breast swabs from the sexual assault kit.

{¶31} D.B. obviously was substantially impaired while she was at the Musketeers Bar with Mr. Jarrell and Ms. Hutchins, and when the police discovered her face-down, and barefoot, in the hallway at the Super 8 Motel. D.B. was swaying, propping her head up with her elbows on the bar, resting her head on the bar, putting her head in Mr. Jarrell's lap at the bar, holding on to Ms. Hutchins and Mr. Jarrell while they put their hands down her pants from the front and the back, falling on her face on the patio, walking into walls at the motel, slurring her speech, sobbing uncontrollably when the police are attempting to collect information, speaking in an incoherent manner and being abrasive, and being unable to remember large portions of what happened on February 18, 2023, and February 19, 2023, after drinking a substance from a water bottle in Mr. Jarrell's vehicle.

> {¶32} Mr. Jarrell, in his brief, admitted to having sexual intercourse with D.B., and the Ohio Bureau of Criminal investigation confirmed Mr. Jarrell's DNA was found inside D.B.'s vagina. Due to D.B.'s substantial impairment, as evidenced by testimony and video footage throughout this incident, Mr. Jarrell knew D.B. could not consent to engaging in sexual activity with him.
>
> {¶33} In viewing this evidence in a light most favorable to the State, the evidence, here, is sufficient for a reasonable trier of fact to conclude Mr. Jarrell is guilty of the crimes of rape, in violation of R.C. 2907.02(A)(1)(c)/(B), and sexual battery, in violation of R.C. 2907.03(A)(2)/(B).

(ECF No. 7-1, Exhibit 8).

Applying the first layer of the "double layer of deference," *White*, 602 F.3d at 710, I agree that a rational trier of fact could have found beyond a reasonable doubt that Mr. Jarrell had sexual intercourse with the victim when she was substantially impaired given his admission that the two had sex, testimony of the victim and Richland police officers regarding her intoxication, and the video evidence introduced at trial.

And even if I had concluded (which I do not) that a rational trier of fact could not have found Mr. Jarrell guilty beyond a reasonable doubt, on habeas review I must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *White*, 602 F.3d at 710. Applying the second layer of the "double layer of deference," I do not find the state appellate court's sufficiency determination unreasonable for the reasons set forth above. Accordingly, I recommend that the Court deny Mr. Jarrell's first ground for relief on the merits.

Moreover, while the Ninth Appellate District did not address Mr. Jarrell's unraised sufficiency of the evidence argument with respect to Dr. Savitski's testimony, the Ninth Appellate District's analysis is fully applicable to that argument as well. Regardless of Dr. Savitski's testimony, there was sufficient evidence to support Mr. Jarrell's convictions for the reasons discussed above. As a result, I alternatively recommend that the Court deny Mr.

Jarrell's second ground for relief on the merits.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule

11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Mr. Jarrell has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Jarrell's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated: September 9, 2026

*Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

> Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.
>
> *Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).